UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIRZAH J. HALL,

                              Plaintiff,

                    v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                              Defendant.

DECISION
and
ORDER

15-CV-00619F
(consent)

_____

APPEARANCES:        LEWIS L. SCHWARTZ, PLLC
                              Attorneys for Plaintiff
                              LEWIS L. SCHWARTZ, of Counsel
                              1231 Delaware Avenue
                              Suite 103
                              Buffalo, New York  14209

                              JAMES P. KENNEDY
                              ACTING UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                    and
                              SUSAN JANE REISS
                              Special Assistant United States Attorney, of Counsel
                              United States Attorney's Office
                              c/o Social Security Administration
                              26 Federal Plaza – Room 3904
                              New York, New York  10278-0004

## JURISDICTION

On April 14, 2016, the parties to this action consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. 14).  The matter is presently before the

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on January 29, 2016 (Dkt. 10), and by Defendant on April 28, 2016 (Dkt. 15).

## **BACKGROUND**

Plaintiff Tirzah J. Hall ("Plaintiff" or "Hall"), born April 16, 1969, AR at 36, [2] is a high-school graduate with associate degrees in accounting and criminal justice, AR at 44, and has been diagnosed with post traumatic degenerative arthritis of her left ankle, for which Plaintiff has undergone four surgeries, including November 10, 2006, February 7, 2007, April 15, 2009, and November 25, 2013. Plaintiff brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications for social security disability benefits filed with the Social Security Administration ("SSA"), on November 1, 2012, for Title II Disability Insurance benefits ("DIB"), and on November 2, 2012, for Title XVI Supplemental Security Insurance benefits ("SSI") (together, "disability benefits").

In applying for disability benefits, Plaintiff alleges she became disabled on May 1, 2009, based on physical problems with her left heel and right leg, and a broken left ankle with history of multiple surgeries. AR at 123-24, 164, 175. Plaintiff's applications initially were denied January 17, 2013. At an administrative hearing held April 3, 2014, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella, Plaintiff, represented by Lewis L. Schwartz, Esq. ("Schwartz"), appeared and testified. A vocational expert ("VE") Rachel A. Duchon ("Duchon"), also appeared but did not testify. In the ALJ's

---

[2] "AR" references are to the pages of the Administrative Record manually filed by Defendant on September 30, 2015.

2

decision, issued May, 20, 2014, Plaintiff was found not disabled under the Act during the relevant period. The ALJ's decision became the final decision after it was affirmed by the Appeals Council on June 19, 2015. This action followed on July 13, 2015

On January 29, 2016, Plaintiff filed her motion for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").[3] On April 28, 2016, Defendant filed a motion for judgment on the pleadings (Dkt. 15-1) ("Defendant's Motion"), attaching Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 15-1) ("Defendant's Memorandum"). On May 24, 2016, Plaintiff filed in further support of judgment on the pleadings Plaintiff's Reply (Dkt. 19) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

---

[3] In connection with her motion, Plaintiff states that because Title II provides for DIB to be received "for up to 12 months immediately before the month in which your application is filed," and given that entitlement to DIB begins after the applicant has "been disabled for 5 full consecutive months," the relevant period of disability to be considered is May 1, 2011 to the present, such that a finding of disability prior to May 1, 2011, or after the "date last insured" ("DLI") of September 12, 2012, would result in no payment of benefits. Plaintiff's Memorandum at 7 (quoting 20 C.F.R. §§ 404.621(a) and 404.315(a)(4)). Although eligibility for DIB requires a claimant establish disability prior to her DLI, *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008), SSI benefits are available without regard to an applicant's employment history such that the claimant need establish only that she was disabled by the date the ALJ issued his decision, here, May 20, 2014. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (considering evidence pertaining to the relevant period of time ending the date of the ALJ's decision).

**DISCUSSION**

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 month." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.*  "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* Next to be determined is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent such an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

5

Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing past relevant work, disability benefits will be denied, *id.*, but if the applicant is unable to perform past relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through September 30, 2012, AR at 22, Plaintiff has not engaged in substantial gainful activity since May 1, 2009, her alleged disability onset date, *id.*, Plaintiff suffers from the severe impairment of chronic left ankle pain status post-surgery, and a non-severe impairment of obesity, *id.* at 22-23, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, *id.* at 23, and that Plaintiff retains the residual functional capacity to perform the full range of sedentary work, including

Plaintiff's past relevant work. *Id.* at 23-26. Accordingly, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 26.

Plaintiff raises several challenges to the ALJ's determination, including that Plaintiff meets the criteria for disability under Listing 1.03 pertaining to reconstructive surgery of a weight-bearing joint, Plaintiff's Memorandum at 11-14, the ALJ erred in failing to provide specific and detailed findings regarding the physical demands of Plaintiff's past relevant work, *id.* at 14-16, and the ALJ erred in selectively rejecting a portion of Plaintiff's treating orthopedic surgeon's opinion. *Id.* at 17-20. Plaintiff maintains these errors require remand either for calculation of benefits or for a new hearing to rectify the asserted legal errors. *Id.* at 21-22. Defendant, in contrast, argues the ALJ properly determined Plaintiff's ankle injury does not meet the criteria for disability under Listing 1.03, Defendant's Memorandum at 9-13, and substantial evidence supports the ALJ's determination that Plaintiff had the residual functional capacity to perform sedentary work, *id.* at 13-15, as well as the residual functional capacity to perform her past relevant work as an Operations Clerk and Lockbox Clerk. *Id.* at 15-17. In further support of her motion for judgment on the pleadings, Plaintiff argues the ALJ failed to properly consider Listing 1.03 with regard to Plaintiff's left ankle injury, Plaintiff's Reply at 4-6, failed to provide specific findings as to the physical demands of Plaintiff's past relevant work, *id.* at 6-8, and erred by selectively rejecting a portion of Plaintiff's treating orthopedic surgeon's opinion. *Id.* at 8-9. Because no challenge is raised to the first and second steps of the five-part analysis, the court does not address them.

7

### A. Third Step

Plaintiff's left ankle impairment is assessed under musculo-skeletal impairments in the Listing of Impairments. The ALJ discussed whether Plaintiff's ankle impairment satisfies Listing 1.03, for which the criteria for a finding of disability include

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Part 404, Subpt. P, Appendix 1, Listing 1.03.

A determination that Plaintiff strictly meets these requirements would require a finding that Plaintiff is disabled without regard to Plaintiff's age, education, or work experience. Although it is undisputed that Plaintiff underwent four reconstructive surgeries on her left ankle, which qualifies as a major weight-bearing joint, 20 C.F.R. Part 404, Subpt. P. Appendix 1, Listing 1.00F (defining the ankle as a "major joint" that is "crucial to weight bearing"), at issue is the ALJ's determination that Plaintiff could effectively ambulate within the relevant period of time following her surgeries. AR at 23-26. Further, the burden is on Plaintiff to "demonstrate that her disability [meets][6] '*all* of the specified medical criteria' of [the relevant impairment Listing]." *Otts v. Commissioner of Social Sec.*, 249 Fed.Appx. 887, 888 (2d Cir. Oct. 5, 2007) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (italics in original), and citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (discussing burden of proof applicable to five-step analysis)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. Moreover, "[w]here the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the

---

[6] Unless otherwise indicated, bracketed material is in the original.

8

ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002). Where, however, the ALJ fails to do so, the court may "look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). If the reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," remand generally is required. *Id.* (internal citations omitted).

As relevant here, the regulations provide

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.00(B)(2)(b)(1).

Further,

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.00(B)(2)(b)(2).

Plaintiff maintains the ALJ erroneously determined Plaintiff was able to effectively ambulate insofar as it is undisputed the medical evidence in the record establishes Plaintiff had reconstructive surgery on her left ankle, a major weight-bearing joint, yet the evidence does not also establish Plaintiff meets the final criteria of 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.00(B)(2)(b)(2) ("§ 1.00(B)(2)(b)(2)"), *i.e.*, "use of a walker, two crutches, or two canes." Plaintiff's Memorandum at 12 (citing R. at 23); Plaintiff's Reply at 4-5. According to Plaintiff, because "use of a walker, two crutches, or two canes" are only examples, rather than requirements, for ineffective ambulation under § 1.00(B)(2)(b)(2), the ALJ's observation that Plaintiff did not meet § 1.00(B)(2)(b)(2)'s criteria because she did not require use of a walker, two crutches, or two canes is clear legal error. *Id.* Plaintiff further maintains that the ALJ's determination that the record failed to establish Plaintiff was unable to effectively ambulate is inconsistent with Plaintiff's hearing testimony that between her third surgery, performed April 15, 2009, and fourth surgery on November 25, 2013, Plaintiff always used a cane to walk, a note by Lars Qvick, M.D. ("Dr. Qvick"), dated December 9, 2013, releasing Plaintiff to work as of December 16, 2013, with the restriction that Plaintiff's left leg could not bear weight, as well as the ALJ's acknowledgment that Plaintiff "uses a cane to lean on for support when walking." Plaintiff's Reply at 5-6 (quoting R. at 23). In opposition, Defendant maintains that other substantial evidence in the record establishes Plaintiff was able to effectively ambulate such that Plaintiff cannot establish disability under § 1.03.

The ALJ's determination that to establish an inability to effectively ambulate, "the regulations require the use of a walker, two crutches, or two canes," AR at 23, is clearly

erroneous because a plain reading of § 1.00(B)(2)(b)(2) specifies that ineffective ambulation is not limited to the examples provided by the regulation. Nevertheless, the error is harmless because substantial evidence in the record supports the ALJ's conclusion that Plaintiff failed to prove an inability to effectively ambulate as provided for under § 1.00(B)(2)(b)(1) and (2). In particular, orthopedic surgeon Christopher A. Ritter, M.D. ("Dr. Ritter"), who performed Plaintiff's third ankle surgery on April 15, 2009, noted Plaintiff was "weightbearing as tolerated." *Id.* at 207-08. At a follow-up appointment on May 26, 2009, Dr. Ritter found Plaintiff was "compliant wearing her Controlled Ankle Movement ("CAM") Walker boot and weightbearing as tolerated," with "some soreness but making steady progress." *Id.* at 214. Upon examination, Plaintiff's left ankle range of motion and strength were "quite good" without instability, laxity, or crepitus, and Plaintiff was to start physical therapy. *Id.*

Plaintiff attended physical therapy between April 30 and June 1, 2009, at which time Plaintiff reported decreased pain, improved tolerance for walking and standing, and the ability to stand and walk for about one hour before needing to sit. AR at 288-91. The physical therapist's impression as of June 1, 2009 was that Plaintiff "ambulates independently without assistive device with and without CAM walker in place." *Id.* at 288. On September 1, 2009, Dr. Ritter approved Plaintiff to return to work on September 7, 2009, without restrictions. *Id.* at 215.

Plaintiff did not seek further medical treatment for her left ankle until November 20, 2012, when Plaintiff was examined by orthopedic surgeon Paul J. Mason, M.D. ("Dr. Mason")[7] who proposed conservative treatment, administered an injection for pain relief,

---

[7] Dr. Mason performed Plaintiff's first two surgeries on November 10, 2006, and February 7, 2007.

11

but did not opine as to Plaintiff's ability to ambulate. AR at 232. On December 13, 2012, Plaintiff underwent a consultative examination by Hongbiao Liu, M.D. ("Dr. Liu"), who reported Plaintiff's gait was unsteady, and Plaintiff could not walk on heels and toes because of ankle pain. *Id.* at 234-36. Dr. Liu opined Plaintiff "has moderate limitation for prolonged walking, bending, and kneeling." *Id.* at 236. On December 18, 2012, Dr. Mason reported Plaintiff "ambulates with a mildly antalgic gate." *Id.* at 248.

Between June 7, and August 9, 2013, Plaintiff, seeking to relieve pressure on her left ankle, pursued a weight loss program supervised by Fanwei Meng, M.D. ("Dr. Meng"). AR at 296-302. Dr. Meng noted Plaintiff's history of left ankle surgeries, yet recommended Plaintiff increase daily activities such as parking farther away from buildings, taking stairs instead of the elevator, although aquatic exercise would be a better choice given Plaintiff's "ankle problem." *Id.* at 301. During her course of treatment with Dr. Meng, Plaintiff reported her ankle interfered with exercise, but that she regularly walked, and Plaintiff's weight dropped from 198 lbs. to 175 lbs. *Id.*

On December 5, 2013, Plaintiff was examined by Monika Niemiec, M.D. ("Dr. Niemiec"), who reported Plaintiff denied arthritis or joint pain, and had normal gait and station despite a left leg cast. AR at 325-27. On December 16, 2013, Dr. Qvick released Plaintiff to return to work, noting Plaintiff was restricted to "non-weightbearing left leg." *Id.* at 308. On January 6, 2014, Plaintiff's return to work ("RTW") date was later revised by physician's assistant Jeffrey Daoust ("PA Daoust"), to an estimated date of March 6, 2014. *Id.* at 315.

In her disability benefits applications, Plaintiff indicated she got her children up for school in the morning, prepared meals for her family, did laundry, attended physical

therapy and church, vacuumed, took out the garbage, went outside three times a week, shopped in stores once a month, traveled by driving a car, riding in a car, and taking public transportation, and was able to go out by herself. AR at 153-56. Plaintiff indicated she walked with a limp and could walk a block or two but beyond that would drag her left foot. *Id.* at 157, 159. Although at the administrative hearing Plaintiff testified she remained unable to drive since the fourth surgery on November 25, 2013, *id.* at 39, Plaintiff was tutoring school-children on a part-time basis for 13 hours a week until February 2014, when the tutoring position was eliminated for lack of funding. *Id.* at 41, 44-45.

A careful review of the record establishes Plaintiff's medical reports and her own self-reported statements shows Plaintiff has failed to meet her burden of establishing she was unable to effectively ambulate. To the contrary, substantial evidence in the record supports the ALJ's determination that Plaintiff could effectively ambulate, as defined under 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.00(B)(2)(b)(1) and (2), such that Plaintiff did not meet the criteria for disability under Listing Impairment § 1.03.

**B.     Fourth Step**

Once an ALJ finds a disability claimant is unable to meet the criteria for disability under any impairment listed in Appendix 1, the next step is to consider the applicant's "residual functional capacity," *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of

any PRW.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  Disability benefits will be denied if the applicant remains capable of performing past relevant work ("PRW").[8]  *Id.*

Here, after determining Plaintiff did not meet the criteria for disability under the Listing of Impairments, particularly under Listing § 1.03 because Plaintiff was unable to establish an inability to effectively ambulate as defined under Listing § 1.02(B)(2)(b), the ALJ proceeded to the fourth step of the five-step analysis and determined Plaintiff retained the residual functional capacity ("RFC"), to perform a full range of sedentary work, AR at 23-25, including her PRW as a an operations clerk and a lockbox clerk which the ALJ determined was listed as "light work" in the Dictionary of Occupational Titles ("DOT"), but constituted "sedentary work" as performed by Plaintiff per her own description.[9]  *Id.* at 25-26.

Plaintiff argues the ALJ erred by failing to provide specific findings regarding the physical demands of Plaintiff's PRW as an operations clerk and lockbox clerk at banking institutions over an eight-year period, which Plaintiff maintains qualified as "light work."  Plaintiff's Memorandum at 14-16; Plaintiff's Reply at 6-8.  According to Plaintiff, although

---

[8] "Past relevant work" is defined as work the claimant performed within the past 15 years as substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work.  20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b).  Whether past work qualifies as relevant is determined either as the claimant actually performed it, or as the work generally is performed in the national economy.  *Id.*

[9] "Light" work, as defined under the applicable regulations,
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . .

20 C.F.R. § 404.1567(b).
Someone considered capable of "light work" is presumed also capable of "sedentary work" which
> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. . . .

20 C.F.R. § 404.1567(a).

14

the ALJ found such work qualified as sedentary, Plaintiff's description of the work in the Work History Report establishes they are properly categorized as light work, and the ALJ failed to seek clarification from the VE on this discrepancy. *Id.* Plaintiff further maintains the DOT code the ALJ referenced for her PRW, specifically, DOT No. 216.362-046 is the code for a stock-transfer clerk or stock-transfer technician, which pertains to a brokerage clerk at a securities firm, and not to either of Plaintiff's positions which she held at a bank. *Id.* Defendant argues regardless of any error by the ALJ in identifying Plaintiff's PRW in the DOT, Plaintiff's own description of the operations clerk and lockbox clerk positions establishes they were sedentary as performed by Plaintiff, Defendant's Memorandum at 15-16, and the ALJ was not required to consult a VE at step four of the analysis. *Id.*

Here, the record establishes the ALJ failed to inquire as to the manner in which Plaintiff performed her PRW such that it is not clear whether such PRW qualifies as "light work" or "sedentary work." Accordingly, the ALJ's step four determination is erroneous as a matter of law.

**C.     Fifth Step**

Nevertheless, a determination that Plaintiff was not capable of performing her PRW does not require remand, but does require consideration of the fifth step of the analysis, *i.e.*, whether given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). Despite failing to complete the analysis by which he determined Plaintiff

remained capable of performing her PRW as an operations clerk and a lockbox clerk, the ALJ's further determination that Plaintiff remained capable of performing the full range of sedentary work, AR at 23-25, is supported by substantial evidence in the record, and therefore remand is not required.

In particular, the ALJ determined that despite a lengthy history of ankle problems dating to 2006 when Plaintiff fractured her left ankle, including four surgeries, after each surgery Plaintiff was released to work. AR at 24-25. The ALJ specifically noted that Dr. Liu, who examined Plaintiff in consultation on December 13, 2012, found Plaintiff with an unsteady gait and able to squat only part way, but that Plaintiff used no assistive devices to walk, could rise from a chair without difficulty, needed no help changing for the examination or getting on or off the examination table, and the rest of the examination was essentially normal except for some decreased range of motion for Plaintiff's left ankle, but that Plaintiff was moderately limited as to prolonged walking, bending, and kneeling. *Id.* at 24-25 (citing AR at 234-37). The ALJ also noted the December 16, 2013 RTW release from Dr. Qvick was restricted to non-weightbearing on the left leg. *Id.* (citing AR at 308).

Nor is there any merit to Plaintiff's argument that the ALJ erred by selectively rejecting part of Dr. Ritter's opinion, *i.e.*, that Plaintiff's RTW date of December 16, 2013 was with the restriction that Plaintiff was not able to bear weight on her left leg. Plaintiff's Memorandum at 17-20; Plaintiff's Reply at 8-9. In particular, although Plaintiff was cleared to work as of December 16, 2013, such clearance was accompanied by the restriction of non-weightbearing on the left leg. AR at 308. For reasons not clear, Plaintiff's RTW was delayed from December 16, 2013, to an "estimated" RTW date of

March 6, 2014. AR at 315. Although the latter RTW form, completed by PA Daoust, includes two spaces to be checked to indicate whether Plaintiff's RTW was with or without restrictions, neither space was checked. As such, it cannot definitively be said that Plaintiff's clearance for RTW on March 6, 2014, was without restriction, including the ability to withstand weightbearing on her left leg, which would be necessary to walk or stand. Despite this ambiguity as to whether Plaintiff's RTW was unrestricted, other evidence in the record establishes Plaintiff's RFC as of the April 3, 2014 administrative hearing was sufficient for sedentary work.

In particular, Plaintiff testified at the April 3, 2014 administrative hearing that on March, 31, 2014, Plaintiff was given a CAM walking boot and advised to begin weight-bearing. AR at 53-54. Despite her ankle impairment, Plaintiff was tutoring school children on a part-time basis for 13 hours a week until February 2014, when her tutoring position was eliminated for lack of funding. *Id.* at 41, 44-45. The ALJ specifically commented that although Plaintiff's part-time tutoring work was not sufficient to constitute substantial gainful employment, it was inconsistent with Plaintiff's allegations that she is incapable of all work, and also inconsistent with Plaintiff's claims of disabling pain. *Id.* at 25. Furthermore, insofar as Plaintiff testified at the administrative hearing that her ankle impairment interferes with her ability to sit for a long period of time, AR at 47, the record is utterly devoid of any medical evidence supporting this assertion.

Nor are any non-exertional limitations noted in the record which is significant because absent some non-exertional limitation, the ALJ's conclusion that Plaintiff is not disabled is supported by the Medical Vocational Guidelines or "the Grids," given Plaintiff's RFC, age, and level of education. Specifically, Plaintiff, at age 45, is

considered a younger individual, and having procured two associate degrees, has more than a high school education. Regardless of whether Plaintiff's PRW is considered skilled or unskilled, and if skilled, whether such skills are transferrable or not, Plaintiff is considered not disabled. *See* 20 C.F.R. Part 404, Subpt. P, Appx. 2, §§ 201.18 - 201.22. In fact, for a younger individual like Plaintiff, the Grids direct a finding of disabled only if she is illiterate or unable to communicate in English, with no PRW or having PRW of only unskilled work. *Id.* § 201.17. Finally, although the ALJ failed to take any testimony from VE Duchon, who was present at the hearing, AR at 32-33, 58-59, testimony from a VE as to what work Plaintiff remained capable of performing may be useful in making such determination, but is not required. *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (holding testimony from a vocation expert is not required where a claimant's RFC allows for performing less than the full range of sedentary work which is a "large" category of jobs (quoting SSR 96-9p, 61 Fed.Reg. 34478, 34483 (July 2, 1996))).

Because substantial evidence in the record establishes Plaintiff remained capable of performing a full range of sedentary work, the ALJ's determination will be upheld.

**CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 15) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:　　February 27th, 2018
　　　　　　　Buffalo, New York